**U.S. BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | **Chapter 13** |
| **Janice Walker** | : | |
| **Debtor** | : | **Bankruptcy No.:  10-12592** |
| | : | |
| **Janice Walker** | : | |
| **Movant** | : | |
| **v.** | : | |
| | : | |
| **The Bank of New York Mellon, f/k/a** | : | |
| **The Bank of New York, as Trustee for** | : | |
| **The Certificateholders CWALT, Inc.,** | : | |
| **Alternative Loan Trust 2005-J14,** | : | |
| **Mortgage Pass through Certificates,** | : | |
| **Series 2005-J14** | : | |
| **Respondent** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO RESPONDENT'S
REQUEST FOR SUMMARY JUDGEMENT AND REQUEST FOR SUMMARY
JUDGMENT TO DISALLOW PROOF OF CLAIM 10-1**

**INTRODUCTION**

This memorandum is a response to the one presented by Respondent, Bank of New York

FKA the Bank of New York as Trustee for the CertificateHolders CWALT, Inc., Alternative

Loan Trust 2005-J14 Mortgage Pass Through Certificates, Series 2005-J14.  This memorandum

is presented in accordance with the Federal Rules of Civil Procedure for Judgment Independent

of the motion.  This rule states that "after giving notice and a reasonable time to respond, the

court may: **(1)** grant summary judgment for a nonmovant; **(2)** grant the motion on grounds not

raised by a party; or **(3)** consider summary judgment on its own after identifying for the parties

material facts that may not be genuinely in dispute."[1]  We ask that this rule be followed insofar

---

[1] Fed. R. Civ. P. 56(f)

as finding that the Creditor's claim is without merit and that the court grants summary judgment

in favor of Janice Walker (Debtor) by disallowing Proof of Claim 10-1.

## STATEMENT OF THE CASE

1. On August 31, 2005. Plaintiff borrowed $248,000.00 for the purchase of the property at
   63 Buttonwood Street in Exton, Pa.

2. The loan was secured by a mortgage to a lender named Allied Mortgage Corporation
   ("Allied").  At the time of the signing of the mortgage documents, Allied executed an
   endorsement in blank.

3. The Trust, identified as "Bank of New York FKA the Bank of New York as Trustee for
   the CertificateHolders CWALT, Inc., Alternative Loan Trust 2005-J14 Mortgage Pass
   Through Certificates, Series 2005-J14 ("Creditor" or "Trust"), was created on or about
   November 1, 2005.

4. The Pooling and Servicing Agreement ("PSA"), which defines the rights, duties, and
   obligations of the parties to the Trust, set a "closing date" of November 30, 2005.

5. An affidavit was signed by an agent of the Creditor, stating that they had received the
   note on January 6, 2006, thirty-seven days after the Trust "closing date".

6. On April 15, 2009, the Trust, identified as "Bank of New York FKA the Bank of New
   York as Trustee for the CertificateHolders CWALT, Inc., Alternative Loan Trust 2005-
   J14 Mortgage Pass Through Certificates, Series 2005-J14, acquired an alleged
   Assignment of the Mortgage and not the Note.

7. On or about March 31, 2010 the Debtor filed a Chapter 13 voluntary bankruptcy petition
   in the Eastern District of Pennsylvania.

8. On September 17, 2010, the Creditor filed proof of claim 10-1, claiming an ownership interest in the instant note and mortgage.

9. On November 16, 2010, the Debtor filed the instant cause and comes before the court today requesting an order that the proof of claim be stricken for failure to show that the note is currently owned by the trust.

## STANDARD OF REVIEW

Debtor seeks summary judgment on the issue of whether the Creditor had standing to file a proof of claim when there was a violation of the terms in the PSA on how the note was properly acquired from the original lender.  Summary Judgment is appropriate if the admissible evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2]  The moving party does not need to produce evidence to disprove the opponent's claim but does carry the burden of demonstrating the absence of any genuine issue of material fact.[3]  In turn, the nonmoving party cannot rely on the allegations contained in the complaint. Instead, the nonmoving party must offer specific facts indicating that a genuine issue for trial exists.[4]  If there are no genuine issues as to material facts, the court must determine whether the moving party is entitled to a judgment as a matter of law.[5]

Based on the following arguments the Debtor undeniably proves that the Creditor (The Bank of New York) fails to establish any genuine issue of material fact by filing a proof of claim on the Debtor's promissory note.  This is because the Creditor, through this established trust, never has, and never can own the Debtor's promissory note.  As explained below, the Creditor, in violating its own Pooling and Servicing Agreement, has prevented itself from ever having an

---

[2] *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir.1995) (citing *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed,* 483 U.S. 1052 (1987)).
[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[4] Id. At 324
[5] Fed.R.Civ.P. 56(c).

enforceable right to the subject note and mortgage. This is because the creation and enforcement

of a New York Trust is governed by New York law and the Pooling and Servicing Agreement

was created by the parties to the Trust. Once the Trust violated its own agreement it no longer

had an enforceable right to those assets that were added under said violation. If the Creditor does

not own an enforceable right in the Note they would then be trying to enforce the rights of

another which they cannot do. Therefore, they present before the court no issue of material fact

and summary judgment in favor of the Debtor is appropriate.

### ARGUMENTS

### A. THE TRUST HAS NO STANDING TO FILE A PROOF OF CLAIM BECAUSE THERE WAS NO VALID ASSIGNMENT TO THE TRUSTEE OF THE TRUST

The Creditor fails to prove that they have an enforceable interest in the note to prove standing

to bring an action for enforcement. "To enforce a creditor's rights under a mortgage, courts have

recognized that to have the 'legally protected interest' that makes a party a 'party in interest', the

movant must be the party that has authority to enforce the mortgage under applicable non-

bankruptcy law."[6] Furthermore, it is the responsibility of the one claiming to have the right to

enforce the note who holds the burden of proving that right.[7] Production of an original note at

trial does not, in itself, establish that the note was transferred to the party presenting the note

with the purpose of giving that party the right to enforce that instrument.[8]

Here, the only two times that the Trust indicated it received any assignment or possession of

the Debtor's note was on either January 6, 2006, thirty-seven days after the Trust "closing date"

or April 15, 2009, more than three years after the Trust's "closing date". Therefore, the Creditor

cannot show that it had any interest in the note before, or even close to the Trust "closing date".

---

[6] In Re Alcide, Bankr. E.D. Pa. 10-15489 (citing In Re Agard, 444 B.R. 231, 245 (Bkrtcy.E.D.N.Y., 2011)
[7] In Re Hayes, 393 B.R. 259, 267 (Bkrtcy.D.Mass., 2008) (an entity must prove they have the right to enforce the note and that the right could not possibly belong to any other entity)
[8] In Re Gilbert, N.C. Ct. App. No. COA10-361

The Trust cannot simply take possession of the note now nearly five and a half years after the "closing date". There are two elements required by the Trust documents for a proper transfer of a note 1) the transfer of possession of the instrument to the transferee, and 2) its endorsement by the holder.[9] These elements cannot be proven to have happened before the Trust's "closing date". Therefore, when applying the applicable REMIC rules the Trust must either forfeit the note and admit that it is not part of their pool of loans or be subject to the penalties laid out by the Trust agreement's REMIC provisions.

**A-1.**     **The Instant Trust Is A New York Common Law Trust Governed By New York Law Based On Its Pooling and Servicing Agreement**

The immediate Trust (Creditor) is an entity created by the Pooling and Servicing Agreement ("PSA") under, and therefore governed by, New York law. Allegedly, the Plaintiff's loan, along with other loans, were pooled into the before mentioned Trust and converted into mortgage-backed securities ("MBS") that can be bought and sold by investors, a process known as securitization. The underlying promissory notes of each and every mortgage held by the trust serve to generate a potential income stream for investors.

The Creditor allegedly holding the Plaintiff's note was created on or about November 1, 2005, and is identified as "Bank of New York Mellon FKA the Bank of New York as Trustee for the CertificateHolders CWALT, Inc., Alternative Loan Trust 2005-J14 Mortgage Pass Through Certificates, Series 2005-J14" (the "Trust"). The Trust, by its terms, set a "closing date" of November 30, 2005. The terms of the Trust are contained in the Pooling and Servicing Agreement, which is an approximately 400-page document that creates the Trust and defines the rights, duties and obligations of the parties to the Trust Agreement.[10] The PSA is filed under

---

[9] In Re Kemp, 440 B.R. 624, 630 (Bankr. N.J. 2010).

[10] It is settled that the duties and powers of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries (See United States Trust Co. v. First Nat'l City Bank,

oath with the Securities and Exchange Commission.  The PSA also incorporates by reference a separate document called the Mortgage Loan Purchase Agreement ("MLPA").  These various documents, and hence the acquisition of the mortgage assets for the Trust, are governed under the law of the State of New York pursuant to section 11.03 of the PSA (found at page 133 of 397 of the PSA).

### A-2.  The Trust Instrument/PSA Sets Forth A Specific Time, Method And Manner Of Funding The Trust

The Creditor seeking to foreclose on the Debtor has included in the terms of its Trust agreement (the PSA) a specific time, method and manner of funding the Trust with its assets. The *most critical* time is the Trust's closing date, November 30, 2005.  According to the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the closing date.  Section 2.02(a) of the PSA provides for a window of 30 days after the Trust closing date in which the Trust may complete any missing paperwork or finalize any documents necessary to complete the transfers of assets from the depositor to the Trust.[11]  Thus, for an asset to become an asset of the Trust it *must* have been transferred to the Trust within the time set forth in the PSA.  These requirements of transfers of loans to the Trust and completion of transfer related paperwork thereafter within 30 days are to ensure that the trust complies with its REMIC status and thus be exempt from federal income taxation.   The additional 30 days in the timeline requirement is incorporated from the REMIC provisions of the Internal Revenue Code to provide a "clean-up period" for a REMIC after the "startup day" (which is also the Trust "closing date"). Therefore, according to the plain terms of the Trust agreement in this case, the "closing

---

57 A.D.2d 285, 295-96, aff'd 45 NY2d 869; Restatemet [Second] of Trusts § 186, comments a,d).  *See In Re* IBJ Schroder Bank & Trust Co., 271 A.D.2d 322 (N.Y. App. Div. 1st Dep't 2000).
[11] This requirement is found at page 58 of 397.

date"/"startup date" was November 30, 2005 and the last day for transfer of assets into the Trust

was December 29, 2005.

The importance of these elements was explained by Prof. Adam Levetin of Georgetown

Law School in testimony before the U.S. Senate, November 16, 2010:

> …Parties are free, however, to contract around the UCC[12].    That is precisely what
> pooling and servicing agreements (PSAs) appear to do.   PSAs provide a recital of a
> transfer of the notes and loans to the trust and then they further require that they set forth
> specific requirements regarding the transfer of the notes and mortgages, namely that there
> be a complete chain of endorsements followed by either a specific endorsement to the
> trustee or an endorsement in blank.   The reason for this additional requirement is to
> provide a clear evidentiary basis for all of the transfers in the chain of title in order to
> remove any doubts about the bankruptcy remoteness of the assets transferred to the trust.

> "Problems in Mortgage Servicing from Modification to Foreclosure," Levitin, Adam J.,
> testimony before Senate Committee on Banking, Housing and Urban Affairs, Nov. 16,
> 2010.[13]

## B.    THE TRUST AGREEMENT PROVIDES THE *ONLY* MANNER IN WHICH ASSETS MAY BE PROPERLY TRANSFERRED TO THE TRUST AND ANY ACT IN CONTRAVENTION OF THE TRUST AGREEMENT IS VOID

### B-1.    Transfer of Assets to the Trust Pursuant to the Trust Instrument/PSA

A trust's ability to transact is restricted to the actions authorized by its trust documents. In

this case, the Trust documents permit only one specific method of transfer of the underlying

assets to the Trust. That method is set forth in Section 2.01 of the PSA:

> Pursuant to the Mortgage Loan Purchase Agreement, each Seller sold, transferred,
> assigned, set over and otherwise conveyed to the Depositor, without recourse, all the
> right, title and interest of such Seller in and to the assets sold by it in the Trust Fund….

> In connection with such sale, the Depositor has delivered to, and deposited with, the
> Trustee or the Custodian, as its agent, the following documents or instruments with
> respect to each Mortgage Loan so assigned: (i) the original Mortgage Note endorsed by

---

[12] UCC 1-203
[13] Professor Levitin's testimony is available online at
http://banking.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=1c7f57c0-a25e-4c04-80cc-9ad8e65e0bea

manual or facsimile signature in blank in the following form:  "Pay to the order of _____ without recourse," with all intervening endorsement (SEE page 2 of 2.01)

The analysis of this transfer language requires the court to consider each part.  In the second paragraph of the language in the Trust Agreement, the first statement is one of transfer, stating "*the Depositor has delivered to and deposited with the Trustee or the Custodian the following documents*".  The key document is the original mortgage note, which requires mandatory endorsements found in this language:  "*the original mortgage note….endorsed without recourse*", the affirmative language of the Trust agreement places a burden on the depositor to make a valid legal transfer in the terms required by the Trust instrument.  The key language in the entire paragraph is the final statement which reads: "*and in each case showing a complete chain of endorsements from the originator to the person endorsing the mortgage note".*

Stacked upon the top of this requirement of an unbroken chain of endorsements is the requirement of certification of the final contents of the collateral file for the benefit of the Trust. This requirement is found at Exhibit 1 to the MLPA (Mortgage Loan Purchase Agreement), which is an attachment to and incorporated as a part of the PSA in Section 2.01. This Document is found at Walker 391 and states as follows:

> With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser or its designee, and which shall be delivered to the Purchaser or its designee pursuant to the terms of this Agreement.

> (a) The original Mortgage Note, including any riders thereto, endorsed without recourse to the order of *"Bank of New York National Association, as Trustee for certificateholders* CWALT, Inc., Alternative Loan Trust 2005-J14 Mortgage Pass Through Certificates, Series 2005-J14*,"* and showing to the extent available to the related Mortgage Loan Seller an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee;

**B-2.**    **The Evidence Shows That Plaintiff's Note was not Transferred as an Asset to the Trust Pursuant to the Trust Instrument/PSA**

Debtor's endorsed Note as produced by the Creditor in discovery fails to meet either of the two (2) foregoing ***mandatory*** requirements of the PSA.  First, all notes sold to the Trust were required to have an unbroken chain of endorsements from the original payee to the person endorsing it to the Trustee.  The parties to securitization of the instant Trust as indicated by the PSA and other trust related documents filed with the S.E.C. are Allied Credit Corp. (as Originator), Countrywide Home Loans Servicing (as the Sponsor and Master Servicer), Countrywide Home Loans, Inc (the Depositor), and Bank of New York (the Trustee).  Therefore, no later than the closing date of November 30, 2005, there should have been — at a minimum — endorsements from Allied to Countrywide Home Loans Servicing to Countrywide Home Loans, Inc. to Bank of New York. Yet, the Creditor's note exhibit contains only a single endorsement in blank from the Originator, Allied.  Therefore, there is no "showing" by the Note or any other discovered or filed evidence that there exists an unbroken chain of endorsements of Debtor's Note to the Creditor. Second, there was the aforesaid requirement that, ultimately, within 30 days of the Trust closing date, the actual promissory note must be endorsed over to the trustee for the specific trust to effectively transfer the asset into the trust and therefore make the Debtor promissory note Trust property.  As stated, the Note endorsement is blank and has never been signed over to the Trust.

According to the Court of Appeals in New York, "the law must not yield to expediency and the convenience of lending institutions. Proper procedures must be followed to ensure the reliability of the chain of ownership, to secure the dependable transfer of property, and to assure the enforcement of the rules that govern real property."[14]  This court found that where the proper

---

[14]  Bank of New York, etc. v. Stephen Silverberg, 2010-00131 (N.Y. App. Div. 2011)

assignment of title of the note was missing the lender had no right in enforcing the note.  Even though they may have held the mortgage by law, the holding of the mortgage is a nullity if the debt (the note) is not properly held as well.[15]

In the instant case there is no indication of any transfer of the note into the Trust before April 15, 2009, nearly three and a half (3 ½ ) years after the PSA closing date, or as stated by the affidavit signed by an agent of the Creditor the trust may have received possession on January, 6 2006, thirty-seven days after the PSA closing date. As will now be discussed henceforth, the Creditor's complete and utter disregard for the terms of the PSA, which the Trust itself was responsible for creating, is fatal to its proof of claim because the defects in the china of title to the Trust cannot now be corrected by it.

### B-3.    New York Law Governs The Mandatory Requirements To Effectively Transfer An Asset To A Trust

The Trust at issue herein is governed by law in accordance with the terms of the PSA. If the trust fails to acquire the property, then there is *no trust* over that property which may be enforced.[16]  An attempt to convey to a trust will fail if there is no designated beneficiary in the conveyance.[17] In the context of mortgage-backed securitization, it is clear that registration of the notes and mortgages in the name of the trustee for the trust is necessary for effective transfer to the trust. Within the Statutes of New York governing Trusts, Estates Powers and Trusts Law (EPTL) section 7-2.1(c) authorizes investment trusts to acquire real or personal property "in the

---

[15] Id.  (citing US Bank N.A. v Madero, 80 A.3d 751, 752 (N.Y. App. Div. 2011)

[16] In an action against the individual defendant as trustee, based on the theory of breach of fiduciary obligation, the complaint was properly dismissed on the ground that he had acquired no title or separate control of the goods and, hence, there was no actual trust over the property to breach. Kermani v. Liberty Mut. Ins. Co., 4 A.D.2d 603 (N.Y. App. Div. 3d Dep't 1957).  The Trust documents require that the promissory notes and mortgages be transferred to the Trustee, which under New York trust law requires valid delivery. The question then arises — "What constitutes valid delivery to the Trustee?"

[17] Wells Fargo Bank v. Farmer, 2008 N.Y. Misc Lexis 3248.

name of the trust as such name is designated in the instrument creating said trust." Further, the

actual contracts of the parties, which include the custodial agreements, the mortgage loan

purchase agreements, and the trust instrument known as the "pooling and servicing agreement,"

prescribe a very specific method of transfer of the notes and mortgages to the Trust. Because the

method of transfer is set forth in the Trust instrument, it is not subject to any variance or

exception.[18]

The Trust documents require that the promissory notes and mortgages be transferred to

the Trustee, which under New York trust law requires valid delivery.  The question then arises –

"What constitutes valid delivery to the Trustee?"

When the requirements of transfer to the trustee are viewed in the context of the

corporate or business trust indenture, more information about compliance with these

requirements becomes apparent. One must first understand that:

> "[t]he corporate trustee has very little in common with the ordinary trustee . . . The
> trustee under a corporate indenture . . . has his [or her] rights and duties defined, not by
> the fiduciary relationship, but exclusively by the terms of the agreement. His [or her]
> status is more that of a stakeholder than one of a trustee."[19]

Indeed, "[a]n indenture trustee is unlike the ordinary trustee. In contrast with the latter, some

cases have confined the duties of the indenture trustee to those set forth in the indenture."[20]  The

indenture trustee, it has been said, resembles a stakeholder whose obligations are defined by the

---

[18] Courts may neither ignore the actual provisions of transaction documents nor create contractual remedies that
were omitted from the governing contracts by the contracting parties. *See Schmidt v. Magnetic Head Corp.*, 468
N.Y.S.2d 649, 654 (N.Y. App.Div. 1983) (""It is fundamental that courts enforce contracts and do not rewrite them .
. . An obligation undertaken by one of the parties that is intended as a promise . . . should be expressed as such, and
not left to implication."" (citations omitted)); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 172 N.E.2d 280, 282
(N.Y. 1961) (""[T]he courts may not by construction add or excise terms . . . and thereby 'make a new contract for
the parties under the guise of interpret[ation].'"" (quoting *Heller v. Pope*, 250 N.E. 881, 882 (N.Y. 1928))

[19] AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 2008 N.Y. Slip Op. 5766, 7 (N.Y. 2008)

[20] 18Green v. Title Guarantee & Trust Co., 223 A.D. 12, 227 N.Y.S. 252 (1st Dept.), aff'd, 248 N.Y. 627 (1928);
Hazzard v. Chase National Bank, 159 Misc. 57, 287 N.Y.S. 541 (Sup. Ct. 1936), aff'd, 257 A.D. 950, 14 N.Y.S.2d
147 (1st Dept.), aff'd, 282 N.Y. 652, cert. denied, 311 U.S. 708 (1940).

terms of the indenture agreement.[21] Moreover, "[i]t is settled that the duties and powers of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries".[22]

The clear import of these cases and statutes is that the delivery of an asset to a trustee under the terms of a corporate indenture requires strict compliance with the mandatory transfer terms of the trust indenture. Thus, the Trustee in this case can only take delivery in strict compliance with the terms of the PSA/Trust document. Further, given that New York Estates Powers and Trusts Law section 7-2.1(c) authorizes a trustee to acquire property "in the name of the trust as such name is designated in the instrument creating said trust property," there should be little doubt that for transfer to a trustee to be effective, the property must be registered in the name of the trustee *for the particular trust*. Trust property cannot be, as the Creditor argues, held with incomplete endorsements and assignments that do not indicate that the property is held in trust by a trustee for a specific beneficiary trust.  In fact, it is clear in the law of New York that an attempt to transfer to a trust which fails to specify both a trustee and a beneficiary is ineffective as a conveyance to the Trust. "*The failure to name a beneficiary for the Trustee renders the assignment without merit.*"[23]

This position is further supported logically in the common law of New York by the following propositions:

---

[21]  See Meckel v. Continental Resources, 758 F.2d 811, 816 (2d Cir. 1985) as cited in Ambac Indem. Corp. v. Bankers Trust Co., 151 Misc. 2d 334, 336 (N.Y. Sup. Ct. 1991).

[22]  see, United States Trust Co. v First Nat'l City Bank, 57 A.D.2d 285, 295-296, aff'd 45 NY2d 869; Restatement [Second] of Trusts § 186, comments a, d) as cited in *In re* IBJ Schroder Bank & Trust Co., 271 A.D.2d 322 (N.Y. App. Div. 1st Dep't 2000).

[23]  Wells Fargo Bank, N.A. v. Farmer, 2008 NY Slip Op 51133U, 6 (N.Y. Sup. Ct. 2008)

(1) "Until the delivery to the trustee is performed by the settlor, or until the securities are definitely ascertained by the declaration of the settlor, when he himself is the trustee, no rights of the beneficiary in a trust created without consideration arise".[24]

(2) The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit; there must be a change of dominion and ownership; intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given.[25]  It is the consummation of the donor's intent to give that completes the transaction.  Intention alone, no matter how fully established, is of no avail without the consummated act of delivery.[26]  How could one logically argue that delivering a promissory note endorsed in blank (making it bearer paper) into a trustee's vault is "delivery beyond the authority and control of the donor" when the vault is managed by the agent of the donor? If the donor were to claim that the promissory note were its property, not the trustee's, there would be no evidentiary basis for the trustee to claim ownership. Accordingly, New York law expressly requires that for property to be validly delivered to a trust, the property must pass completely out of the control of the donor (and its agents):

> "If the donor delivers the property to the third person simply for the purpose of his delivering it to the donee as the agent of the donor, the gift is not complete until the property has actually been delivered to the donee. Such a delivery is not absolute, for the ordinary principle of agency applies, by which the donor can revoke the authority of the agent, and resume possession of the property, at any time before the authority is executed.""[27]

---

[24] (cf. Riegel v. Central Hanover Bank & Trust Co., 266 App. Div. 586; Matter of Gurlitz [Lynde], 105 Misc. 30, aff'd 190 App. Div. 907, supra; Marx v. Marx, 5 Misc 2d 42) as cited in Sussman v. Sussman, 61 A.D.2d 838 (N.Y. App. Div. 2d Dep't 1978).

[25] Vincent v. Putnam, 248 N.Y. 76, 82-84 (N.Y. 1928).

[26] Phillippsen v. Emigrant Indus.Sav. Bank, 86 N.Y.S.2d 133, 137-138 (N.Y. Sup. Ct. 1948). (*Beaver v. Beaver, supra,* 117 N.Y. 421, 428, 22 N.E. 940, 941, 6 L.R.A. 403, 15 Am.St.Rep. 531).

[27] (See, also, Grant Trust & Savings Co. v. Tucker, 49 Ind. App. 345; Furenes v. Eide, 109 Ia. 511; Dickeschied v.

Another case addressing this issue holds that "In order that delivery to a third person shall be effective, he must be the agent of the donee. Delivery to an agent of the donor is ineffective, as the agency could be terminated before delivery to the intended donee."[28]

Trustees for securitizations often occupy many roles simultaneously and conflictingly both as document custodians and trustees for a myriad of thousands of securitizations as well as for various parties who are active in the securitization process including originators, servicers, sponsors and depositors. Accordingly, it is inconceivable that anything other than registration into "the name of the trust as such name is designated in the instrument creating said trust property"[29] could ever qualify as delivery to any particular securitization trust.  Absent such registration, there would be nothing that would indicate which of thousands of trusts in the care of a trustee a particular promissory note might belong to or if it were the personal property of the trustee itself.  Absent such registration, a promissory note would simply be bearer paper, and thus the property of anyone who obtained possession of it.  Further, if anything less constituted delivery, why are our courts overwhelmed with robo-signed mortgage assignments and affidavits expressing legally-impossible transfers into the specific trusts long *after* the trusts have closed for funding?

This point was recently slammed home to the public consciousness in a watershed decision out of the State of Massachusetts.  On January 7, 2011, the Supreme Judicial Court of Massachusetts—the highest court in that state—rendered a unanimous verdict in a case captioned

---

Exchange Bank, 28 W. Va. 340; Love v. Francis, 63 Mich. 181; [**428] Merchant v. Building Co. [***15] , 17 Ohio Circuit Ct. 190.)

[28]  In re Nat'l Commer. Bank & Trust Co., 257 A.D. 868, 869-870 (N.Y. App. Div. 3d Dep't 1939) citing Vincent v. Rix, supra v. Rix, supra; Bump v. Pratt, 84 Hun, 201.

[29] EPTL 7-2.1(c)

*U.S. Natl. Bank Assn., Trustee, v. Ibanez, For ABFC 2005-0PT 1 Trust, ABFC Asset Backed Certificates, Series 2005-0PT 1*, No. SJC-10694, (Mass. Jan. 7, 2011).   While that ruling is of course not binding upon this court, it is very much contrary to the mortgage securitization industry's position in cases involving mortgage loans which have allegedly been securitized. The facts of the case in Massachusetts and the facts of this instant case are similar. Both the Massachusetts and the Walker cases concern an entity seeking to show ownership when the Trust entities did not possess the underlying promissory note at the time of the foreclosure (or attempted foreclosure in the Walker situation). The case was a ruling on two consolidated cases – both cases were filed by banks (as trustees for two separate trusts) to quiet title on properties they had foreclosed and purchased at the foreclosure sale to satisfy the mortgagor's debt.   The Massachusetts Supreme Judicial Court held that neither bank proved that its trust owned the mortgages when they foreclosed on the homes; therefore, neither had title to the foreclosed properties and that their foreclosures were void.   Effectively, this put the borrowers back into the place they were before the foreclosure.   The Massachusetts Supreme Judicial Court did not tell the homeowners they are allowed to shirk their obligation to pay their mortgages, which are still outstanding, valid obligations.   The Massachusetts Supreme Judicial Court did, however, sharply instruct the banks that they must have the proper documentation which demonstrates a valid right to foreclose before a foreclosure can be carried out. It is well worth noting the conclusion of the Massachusetts *Ibanez* opinion.   The Massachusetts Supreme Judicial Court noted that "The legal principles and requirements we set forth are well established in our case law and our statutes. All that has changed is the [banks'] apparent failure to abide by those principles and requirements in the rush to sell mortgage-backed securities."   Just as the principles and requirements of Massachusetts law are well-founded, so too are those of New York law, and they

should be upheld even if adherence to the law is inconvenient for banks rushing to sell mortgage-backed securities.

Similarly, a case in Alabama left the judge "surprised to the point of astonishment that the defendant trust did not comply with the terms of its own Pooling and Servicing Agreement and further did not comply with New York Law in attempting to obtain assignment of plaintiff's note and mortgage".[30]  The judge then granted summary judgment on the matter in favor of the plaintiff because of the failure of the Trust to follow the terms and conditions that it set out in its own PSA.

## B-4.    THE *INTENT* TO TRANSFER AN ASSET TO THE TRUST *IS NOT A TRANSFER TO THE TRUST*

The content of these statutes, cases and contracts lead to one inescapable conclusion:   the intent of the parties and the requirements of the contracts were that the assets be conveyed to the Trusts by the Trust closing dates.  For a transfer to any particular trust to be effective, there should have been a registration of the assets into "the name of the trust as such name is designated in the instrument creating said trust property"—this is the only method by which these assets could have been "divested from the possession and title" of the donors.

In response to the lucidity of the controlling law on this issue, the mortgage foreclosure industry has chosen to argue that it is clear that it was the parties' "intent" to transfer these assets and therefore "no court" would ever declare that these assets were not transferred to these trusts. The controlling law is overwhelmingly against the industry in this position.  The failure to deliver the notes and mortgages to these trusts as required by the trust instruments is a default under the terms of the very agreements that

---

[30] Horace v. LaSalle Bank National Association, et al, Ala. Cir. Ct. 57-CV-2008-000362.00 (2011) (Order granting summary judgment in favor of debtor)

created them.  The securitization industry chose to create its securitization trusts under

New York law precisely because the law was ancient and settled. However, lenders

during the sub-prime spree sought to have their cake and eat it too.  By saving money on

each transfer of a loan to a trust by transferring a loan to the "stakeholder" entity MERS,

lenders apparently confused this cost saving device for an actual legal chain of

ownership transfer and began to ignore *en masse* the requirements of their own Trust

agreements for which they paid white glove law firms $600.00 per hour to create. Now

that the actions of the lenders and their law firms in the foreclosure industry contradict

that New York law that governs them, parties such as the defendant trust are left to

argue hope against precedent.  The well-settled New York trust law provides that "A

mere intention to make a gift which has not been carried into effect confers no right

upon the intended beneficiary. There must be also delivery beyond the power of further

control and dominion."[31]  Equity will not help out an incomplete delivery. If the agent of

the donor has failed to make the delivery expected equity will not declare him a trustee

for the donee.[32] "Thus, Thornton on Gifts and Advancements (§140) notes:

> "In determining whether there has been a valid delivery, the situation of the
>
> subject of the gift must be considered. Thus if it is actually present, and capable
>
> of delivery without serious effort, it is not too much to say that there must be an
>
> actual delivery, although the donor need not in person or by agent hand the
>
> article to the donee, if the latter assumes the possession."

---

[31](Vincent v. Rix, 248 N.Y. 76, 85 v. Rix, 248 N.Y. 76, 85; Matter of Green, 247 App. Div. 540; McCarthy v. Pieret, 281 N.Y. 407, 409.) as cited by In re FIRST TRUST & DEPOSIT CO., 264 A.D. 940, 941 (N.Y. App. Div. 4th Dep't 1942)
[32]Vincent v. Putnam, 248 N.Y. 76, 82-84 (N.Y. 1928)

There was absolutely nothing in the physical nature of the papers to be delivered in this case, or in the physical condition or the surroundings of the donor, that made a symbolical delivery necessary."[33]  It is true that the old rule requiring an actual delivery of the thing given has been very largely relaxed, but a symbolical delivery is sufficient only when the conditions are so adverse to actual delivery as to make a symbolical delivery as nearly perfect and complete as the circumstances will allow.[34]

Further, the failure to convey to a trust per the controlling trust document is not a matter that may be cured by the breaching party.  New York law is unflinchingly clear that a trustee has only the authority granted by the instrument under which he holds, either by deed or will. This fundamental rule has existed from the beginning and is still law.[35] An indenture trustee is unlike the ordinary trustee. In contrast with the latter, some cases have confined the duties of the indenture trustee to those set forth in the indenture.[36] From this context springs the seminal rule of law that effectively causes the parties to the Trust agreement and the Trust to be "gored by their own bull".  New York's law is so well-settled regarding the limitations of a trustee's power to act that New York's Estates Powers and Trust Law Section 7-2.4 states:

§ 7-2.4 Act of trustee in contravention of trust

If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.

---

[33]In re Van Alstyne, 207 N.Y. 298, 309-310 (N.Y. 1913).
[34] In re Van Alstyne, 207 N.Y. 298, 309-310 (N.Y. 1913).
[35] Allison & Ver Valen Co. v. McNee, 170 Misc. 144, 146 (N.Y. Sup. Ct. 1939).
[36] Ambac Indem. Corp. v. Bankers Trust Co., 151 Misc. 2d 334, 336 (N.Y. Sup. Ct. 1991).

Therefore, the trustees for these trusts may only acquire assets in the manner set forth in the trust instrument and may not acquire assets in violation of the trust instrument.  To the extent that any assets were not conveyed to these trusts as required and when required by the trust instrument, they are not assets of the trusts and the trustee cannot correct this deficiency now since the funding period provided in the Trust instruments passed many years ago.  The attempts to acquire assets by these trusts which violate the terms of the Trust instrument are void.  Therefore, late assignments, improper chains of title, late endorsements, improper chains of title in the endorsements and the attempt to transfer to the trusts by foreclosure deed are just a number of the many examples of actions which are ***void*** if taken by a party to the indenture who is attempting to transfer property to the Trustee for the Trust in violation of the trust instrument.

### C.   THE TRUST NEVER PROPERLY ACQUIRED THE MORTGAGE NOTE AND THE TRUST CANNOT CURE ITS FATAL STANDING DEFECT

Under New York law there is no trust over property that has not been properly transferred to a trust.  The Defendant Trust stated to the U.S. Securities and Exchange Commission in filings under oath that it has assets in excess of $400 million.[37]  To acquire assets, the Trust must be funded in accordance with the requirements of the PSA/Trust documents. The pertinent terms of the agreement are found at §2.01 (Conveyance of Trust Fund) of the PSA.[38]  This section details how the mortgage notes in the instant case were supposed to be transferred from Allied Credit Corp. (as Originator) to Countrywide Home Loans Servicing (as the Sponsor and Master Servicer) to Countrywide Home Loans, Inc. (the Depositor) to the Trust (the Trustee). Countrywide Home Loans, Inc. as the Depositor was required to deliver to Bank of New York the original mortgage note showing an unbroken chain of endorsements from the original payee

---

[37] http://sec.gov/Archives/edgar/data/1352655/000088237706000801/d431341.htm (last viewed 1/7/10)
[38]   Bates #:  Lasalle/Horace 0067.

to the person endorsing it to the Trustee.    The person endorsing to the Trustee was the Countrywide Home Loans entity.[39]

In the discovery provided to the Plaintiff, the only endorsement to the Debtor's mortgage note is a blank endorsement "pay to the order of _____ without recourse Allied Credit Corp,"[40] Nothing has been submitted by the Trust to the Court indicating that Allied ever assigned the mortgage to any other entity. Thus, based on the documents in this case, Allied, not Bank of New York, is the mortgage holder. The Creditor, therefore, does not have the authority to enforce the mortgage.

As argued before, no later than November 30, 2005 there should have been — at a minimum — endorsements from Allied Credit Corp. (as Originator) to the other entities identified by the PSA as parties to the securitization, i.e. Allied to Countrywide Home Loans Servicing (as the Sponsor and Master Servicer) to Countrywide Home Loans, Inc (the Depositor) to the Trust (the Trustee).[41] And yet, there is no "showing" of an unbroken chain of endorsements in the documents provided to the Plaintiff.

Any attempt by The Creditor to transfer the promissory note to the Trust at this late date would fail for numerous reasons, not the least of which is that the closing date of November 30, 2005 passed nearly five and a half  (5 ½ ) years ago.  By the terms of the Trust and the applicable provision of the Internal Revenue Code incorporated into and a part of the Trust agreement, the promissory note cannot be transferred to the Trust after the Closing Date.  Because the un-contradicted evidence in the case is that the Debtor's loan never was conveyed to the Trust

---

[39] *See* Bates #: LaSalle/Horace 0067-0068: ""(A) in blank or to the order of ""LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2006-EC2,"" or (B) in the case of a loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee, . . .""
[40] Bates #: Horace v. LaSalle 29.
[41]  Plaintiff states ""at a minimum"" because there may have been more transfers.

before the closing date and a conveyance to the Trust at this time would be void as violating the terms of the PSA, the Court is left with one clear and inescapable proposition: ***The Trust has never owned the Walker promissory note and the Trust can never own the Walker promissory note.***

### D.    <u>JANICE WALKER HAS STANDING TO RAISE STANDING ARGUMENTS</u>

The Creditor disputes the fact that Debtor can raise standing arguments under the terms of the PSA.  This argument made by the Trust is a feeble attempt to draw attention away from its own negligence in ascertaining proper enforceable rights to the Debtor's note.  Debtor is not seeking any affirmative relief based on contract or otherwise, but is instead simply seeking to ensure that the party trying to take her home is in fact the real party of interest and that she is not facing any potential future liability in favor of the actual beneficial owner of the mortgage obligation.  In a growing body of case law, federal and state court judges have been dismissing foreclosure complaints and refusing to allow mortgage companies to enforce mortgage debt in bankruptcy for lack of proof that the Creditor owns the securitized loan at issue, even when there is a purported assignment of mortgage to the trust.  <u>See</u>, e.g.  <u>In re Hayes</u>, 393 BR 259, 267 (Bkrtcy.D.Mass. 2008) (disallowing Deutsche Bank's claim because Deutsche Bank failed to prove ownership of the note and mortgage); <u>In re Kemp</u>, ___ B.R. ___, 2010 WL 4777625, 5 (Bkrtcy.D.N.J.,2010) (disallowing Bank of New York's claim because the Note was not properly endorsed and transferred to the Trust, despite an assignment of mortgage to the Trust); <u>Bank of New York v. Raftogianis</u>, ___ A.2d ___,  2010 WL 5087866, 5 (N.J.Super.Ch.,2010) (dismissing foreclosure complaint because Plaintiff Trust could not show possession of the Note despite an assignment to the Trust).[42]

---

[42] Other examples include <u>In re Foreclosure Cases</u>, Nos. 07-CV-166 et al., 2007 WL 4589765 (S.D. Ohio Dec. 27, 2007) (Holschuh, J.) (15 consolidated cases); <u>Midfirst Bank v. Davenport</u>, No. 07-CV-405, 2007 WL 4246271 (S.D.

## CONCLUSION

Based on the law, the terms of the Pooling and Service Agreement, the failure to show the proper chain of endorsements, and the arguments contained herein, Plaintiff moves this Court to deny Movant's Motion for Summary Judgement and grant her Summary Judgment by disallowing Proof of Claim 10-1.

RESPECTFULLY SUBMITTED,

LAW OFFICE OF STEPHEN J. ROSS

BY:    */s/ Stephen J. Ross*_____
          Stephen J. Ross, Esquire
          I.D. No 92793
          152 E. High Street, Suite 100
          Pottstown, PA 19464
          610-323-5300
          SRoss@SJR-LAW.com
Dated:  June 23, 2011          Attorney for Debtor

---

Ohio Nov. 29, 2007) (Rose, J.); HBC Bank USA v. Rayford, No. 07-CV-428, 2007 WL 4190805 (S.D. Ohio Nov. 21, 2007) (Rose, J.); Novastar Mortgage, Inc. v. Riley, No. 07-CV-397, 2007 WL 4190802 (S.D. Ohio Nov. 21, 2007) (Rose, J.); Novastar Mortgage, Inc. v. Grooms, No. 07-CV-395, 2007 WL 4190796 (S.D. Ohio Nov. 21, 2007) (Rose, J.); Wells Fargo Bank, N.A.  v. Abdulla, No. 07-CV-2176 (N.D. Ohio Nov. 20, 2007) (Gwin, J.); In re Foreclosure Cases, 521 F. Supp. 2d 650, (S.D. Ohio Nov. 15, 2007) (Rose, J.) (20 consolidated cases); Deutsche Bank National Trust Co., Trustee v. McCarthy, Case No. 1:07 CV 3071 U.S.D.C. (N.D. OHIO), 10/30/07 (J. Dowd);                                      CONTINUED TO NEXT PAGE
          Aurora Loan Servs., LLC v. Sattar, No. 15208/07, 2007 WL 2917245 (N.Y. Sup. Ct. Kings Co. Oct. 9, 2007) (Schack, J.); Deutsche Bank Nat'l Trust Co v. Clouden, No. 277/07, 2007 WL 2709996 (N.Y. Sup. Ct. Kings Co. Sept. 18, 2007) (Schack, J.); Aurora Loan Servs. v. Grant, No. 35680/06, 2007 WL 2768915 (N.Y. Sup. Ct. Kings Co. Aug. 29, 2007) (Rothenberg, J.) EMC Mortgage Corp. v. Batista, No. 34145/06, 2007 WL 1599986 (N.Y. Sup. Ct. Kings Co. June 5, 2007) (Schack, J.); In re: Parker, Bky. Vt. Adversary Proceeding #09-1022, filed 9/29/10; In M&T Bank v. Smith, 7th Jud. Cir. Fl, Case No. CA 09-0418, U.S. Bank, NA. v. Emmanuel, et al., NY, Kings Co., 2010 NY Slip Op 50819(U), decided 5/11/10; In Re Weisband, Bky. D. Az. Case No 4:09-bk-05175-EWH, 3/29/10.; In re Mims, 2010 WL 4260041, No. 10-14030 (MG), Bky S.D.N.Y., 10/27/10; Wells Fargo Bank v. Jordan, 2009 OH 1092 (8th Dist. Ct. App., Mar. 12, 2009); Provident Funding Associates, L.P. v. Tamara Turner et al., N.Y. Sup. Ct. Case CV-09-706959 (11/09/10). BAC Home Loans Servicing LP. V. Stentz et al., FL 6th Jud. Cir. Ct. Pasco Co.,Case No. 51-2009-CA-7656-ES, Order 12/1/10 (Tepper, J.).